### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES R. HANSON, RONALD JONES, | § | |
| AND LUIS E. FERNANDEZ, ON BEHALF OF | § | |
| THEMSELVES AND ALL OTHERS SIMILARLY | § | |
| SITUATED, | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-13-0027 |
| | § | |
| CAMIN CARGO CONTROL, INC., | § | |
| *Defendant*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This Fair Labor Standards Act case is before the court on the parties' cross-motions for summary judgment. The motions have been fully briefed and were argued at a hearing on February 18, 2015. For reasons explained below, defendants' motion (Dkt. 119) is denied in part and granted in part; plaintiffs' motion regarding inspectors (Dkt. 126) is granted; plaintiffs' cross-motion on calculation of damages (Dkt. 139) is denied; plaintiffs' motion regarding dispatchers is granted (Dkt. 128); and plaintiffs' motion regarding the good faith defense (Dkt. 127) is granted.

## BACKGROUND[1]

Defendant Camin Cargo Control, Inc. is an oil and petrochemicals inspection company with over 30 locations, operating in more than 15 countries throughout the Americas and the Caribbean. Camin employs inspectors to collect samples and gauge the

---

[1]     The following facts are undisputed unless otherwise noted.

quality of petroleum, crude oil, and distillate product shipments to ensure they meet customer requirements. Until recently, inspectors generally worked a six-day on, three-day off schedule -- *i.e.*, they were available to receive assignments for six consecutive days and then off duty for three days. At times relevant to this case,[2] inspectors received a bi-weekly salary, plus extra payments for (1) a car allowance and mileage; (2) meals; and (3) offshore duty. Camin paid inspectors overtime according to the fluctuating work week method set forth in 29 C.F.R. § 778.114(a). Camin did not include the extra payments when calculating the inspectors' regular rate of pay.

Camin also employs inspector coordinators, or dispatchers.[3] The dispatchers coordinate the inspection and testing operations by, among other things, assigning inspectors to jobs as needed. Camin classifies the dispatchers as exempt employees not entitled to overtime pursuant to the FLSA's administrative and executive exemptions. Plaintiffs contend that the dispatchers' primary duties do not qualify them for either exemption.

The parties have filed cross-motions for summary judgment as to the fluctuating workweek method of paying inspectors and the exemptions for dispatchers. Plaintiffs also move for summary judgment on Camin's affirmative defense of good faith.[4]

---

[2]     Camin made significant changes to its pay practices in December 2012.  *See* Dkt. 126-10.

[3]     Defendants call this position "inspector coordinator," while plaintiffs use the term "dispatcher." The court uses "dispatcher" to avoid confusion with the position of inspector, and for brevity.

[4]     Camin also moved for summary judgment as to the claims of 22 plaintiffs who were also plaintiffs in the case *Brumley v. Camin Cargo Control, Inc.*, No. Civ. A. 08-1798, 2010 WL

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative,

---

1644066 (D.N.J. Apr. 22, 2010) (Dkt. 119), and moved the court to take judicial notice of documents on file in that case (Dkt. 144). Those motions are granted based on the agreement of counsel stated on the record at the hearing. The claims of 11 plaintiffs no longer employed by Camin as of May 2, 2012 are dismissed. The claims of the remaining 11 plaintiffs who participated in *Brumley* are limited to damages incurred after May 2, 2012.

summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## ANALYSIS

### 1.    Inspectors

The FLSA is a remedial statute that requires employers to pay non-exempt employees overtime at an hourly rate "not less than one and one-half time the regular rate at which he is employed." 29 U.S.C. § 207(a). The employee bears the burden to prove all the elements of his overtime claim, including a claim that the employer improperly applied the so-called fluctuating workweek method of payment. *See Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

To resolve any unpaid overtime claim, it is necessary first of all to determine the employee's "regular rate" of pay. This key term is not defined in the statute. The Supreme Court early on declared that it means "pay by the week, to be reduced by some method of computation to hourly rates." *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 579 (1942). The *Missel* Court also declared that, as a general rule, "[w]age divided by hours equals regular rate." *Id.* at 580 n.16. In line with that guidance, the Department of Labor has issued interpretive bulletins setting out the principles for computing the regular rate of pay. Their basic formula is an elaboration of the *Missel* rule:

> The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any

4

workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109.

The parties dispute both the numerator ("total remuneration") and the denominator ("hours actually worked") of the regular rate formula as it applies to the inspectors. Camin contends that certain extra payments in addition to the bi-weekly salary should not be considered as part of his wages for that workweek. On the other hand, plaintiffs contend that only non-overtime hours (*i.e.*, 40) should be counted in the divisor, rather than all hours actually worked that week. For reasons explained below, both contentions are rejected.

### a.    Wages v. Reimbursement

Camin contends that the extra payments for offshore duty, car allowance, mileage, and meals are reimbursements for expenses; plaintiffs contend they are wages. According to the DOL,

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, [this section] is applicable to reimbursement of such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for service rendered by the employees during any hours worked in the work week.

29 C.F.R. § 778.217(a). Thus, the key issues are (1) whether the payment is solely for the benefit or convenience of the employer, and (2) whether the payment reasonably approximates actual expenses. Any amount in excess of actual or reasonably approximate

5

expenses must be included in the regular rate. 29 C.F.R. § 778.217(c).

***Offshore duty pay.*** Inspectors on offshore assignment were paid $75.00 per day, unless the vessel was in harbor, in which case the rate was $30.[5] Inspectors were required to stay on an offshore vessel as long as necessary to complete the assignment, which could be a matter of hours or days. According to CEO Claudio Camin, the offshore payment was intended to reimburse inspectors for hygiene products, medication, food, water, soap, and small gifts.[6] Camin argues that this type of payment was primarily for the employer's benefit because the employee would need these items when away from home.

But, as plaintiffs point out, these items would be needed by an employee no matter where he was stationed, onshore or offshore. Nor is there any reason to believe that an offshore assignment would cause the employee to spend more on hygiene products and soap than normal. Even a former manager of Camin's Pasadena branch conceded that offshore pay could not reasonably be called an expense reimbursement, and that it was more properly characterized as compensation for employee inconvenience.[7] The Court concurs. This type of payment more closely resembles a "shift differential" than a reimbursement for expenses incurred solely for the employer's benefit. *See, Ayers v. SGS Control Servs.,* No. Civ. A. 03-9077, 2007 WL 646326 *10 (S.D.N.Y. Feb. 27, 2007); *Adeva v. Intertek USA, Inc.*, No. Civ.

---

[5]     Dkt. 140-4 at 22; Dkt. 140-23.

[6]     Dkt. 137-15.

[7]     Dkt. 126-7 at 22.

A. 09-1096, 2010 WL 97991 *2 (D.N.J. Jan. 11, 2010). In addition, Camin has offered no competent evidence the offshore payment reasonably approximates the inspectors' actual expenses.[8] In contrast, plaintiffs have presented evidence that inspectors incurred no expenses at all when working offshore.[9] The court concludes the offshore duty pay constitutes wages that must be included in the regular rate of pay for purposes of overtime.

*Car allowance and mileage*.   There is no dispute that driving was required as part of an inspector's everyday job. Inspectors were "required to own and maintain a vehicle, in good working order in order to complete their necessary job functions."[10] Camin paid inspectors a car allowance of $175 (Gulf Coast) or $184 (East Coast) per pay period.[11] The car allowance appeared on every bi-weekly pay check whether the inspectors worked during the pay period or not and without the need to submit any evidence of their expenses.[12] In addition, Camin paid what it termed a "mileage reimbursement." From 2010 until 2012, Gulf Coast inspectors received $10.00 per job, and East Coast inspectors received $9.00 per job.[13] Beginning in 2012, Camin instituted a system (called FIT) that paid inspectors an amount

---

[8]     For this proposition, Camin cites Claudio Camin's deposition (Dkt. 137 at 18). But the deposition excerpt cited does not say that actual expenses reasonably approximated $75.00 per day. *See* Dkt. 137-16 at 2. Indeed, $75.00 would buy a lot of soap and toothpaste.

[9]     Dkt. 126-7 at 22; Dkt. 126-17; Dkt. 126-18; Dkt. 126-19.

[10]    Dkt. 137-9 at 13; Dkt. 137-11 at 5.

[11]    Dkt. 137-4 at 10.

[12]    Dkt. 126-6 at 31; Dkt. 137-4 at 10.

[13]    Dkt. 126-7 at 17-18.

based on the distance between the office and the terminal where the job was located.[14]

Car and mileage payments may in some cases constitute a reimbursement that does not affect an employee's regular wage rate. *See Berry v. Excel Group, Inc.*, 288 F.3d 252, 254 (5th Cir. 2002) (per diem was legitimate, reasonable reimbursement of travel expense when worker was required to work 100 miles from home). However, a payment that compensates an employee for his regular commute is primarily for the employee's own benefit and constitutes wages. *See Howe v. Hoffman-Curtis Partners Ltd.*, No. Civ. A. H-03-4298, 2005 WL 6443877 at *2 (S.D. Tex. July 6, 2005).

Unlike the plaintiff in *Berry*, Camin did not make the car and mileage payments to compensate inspectors because they were required to work far from home. Inspectors were paid the same amount whether they traveled from home directly to a terminal and back home, or from terminal to terminal, without stopping at the branch office.[15] While Camin may not have specifically intended the payments to compensate inspectors for their regular, daily commutes to and from work, that was the practical effect.

Plaintiffs have submitted the expert opinion of David Breshears that from 2010-2012 Camin reimbursed plaintiffs on average $2.315 per mile. Breshears's opinion is based on the combination mileage payment and car allowance.[16] Plaintiffs have also submitted the expert

---

[14]     Dkt. 126-6 at 16-17.

[15]     Dkt. 126-6 at 65; Dkt. 126-7 at 20; Dkt. 126-11 at 16-17.

[16]     Dkt. 126-12.

opinion of Robert B. Speakman, Jr. that a reasonable reimbursement rate for work related mileage for 2010-2012 is between 16.5¢ and 24¢ per mile.[17] It does not appear that Camin has analyzed its mileage compensation system to determine whether it reasonably approximated the number of miles inspectors actually drove or their cost per mile.[18] However, in July 2012, Laura Stasik, an in-house Camin lawyer, researched IRS regulations, a AAA driving cost analysis, as well as a few other sources. She prepared a memorandum concluding that the car allowance " is reasonably proportionate to the expenses incurred with vehicle ownership in furtherance of the employer's business."[19] The memorandum specifically cited the AAA analysis of annual costs, which takes into account "fuel, maintenance, tires, insurance, license, registration, taxes, depreciation, and financing costs."

This after-the-fact memorandum, which is Camin's only evidence of proportionality, is too conclusory to be probative. For one thing, it assumes proportionality based merely on the observation that Camin's payments were below AAA's estimated average cost of ownership. No effort was made to determine what percentage of the vehicle's total costs are reasonably attributed to work versus personal use. Camin claims that the wear and tear on

---

[17]   Dkt. 126-13.

[18]   *See* Dkt. 137-9 at 5. Ms. Stasik testified that inspectors drove approximately 20,000 miles per year for work (Dkt. 137-9 at 4), and a Corpus Christie manager, Kimberly Holloway, testified that inspectors drove approximately 25,000-30,000 miles per year (Dkt. 137-12 at 3). But both opinions are based on hearsay and are inadmissible. Even taking that evidence into consideration, Camin has not created a fact issue as to whether the mileage payment was a reasonable approximation of an inspector's actual expenses.

[19]   Dkt. 137-9 at 13-14.

a vehicle exceeds that of the average commuter,[20] but no supporting numbers are shown. Finally, the AAA analysis includes things (such as fuel) that were covered separately by the mileage payment.

The court concludes that the car allowance and mileage payments were not reimbursements based on a reasonable approximation of actual expenses, and therefore should have been included in the inspectors' regular rate of pay.

***Meal allowance.*** Inspectors working at least 8 hours were paid a $7.00 meal allowance, plus an extra $7.00 for each additional 4 hours, up to a cap of $21.00 per day. The record is clear that this payment is based upon and varies with the number of hours worked. Plaintiffs argue, based on *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041-42 (5th Cir. 2010), that any per diem that varies with the amount of hours worked, as here, is part of the regular rate of pay in its entirety. In *Gagnon*, the Fifth Circuit held that an employer violated the FLSA by paying a skilled worker $5.50 per hour "straight time" and an additional per diem of $12.50-$13.50 per hour. This holding is consistent with DOL guidelines expressed in its Field Operation Handbook : "[I]f the amount of the per diem or other subsistence payment is based upon and thus varies with the number of hours worked per day or week, such payments are part of the regular rate in their entirety."[21]

*Gagnon* portrayed a blatant attempt by an employer to artificially lower an employee's

---

[20]    *See, e.g.,* Dkt. 137-13 at 2.

[21]    *Gagnon,* 607 F.3d at 1041 n.6 (quoting DOL Field Operation Handbook).

regular rate of pay by shifting salary to a per diem. The meal allowance is not so blatant. Nonetheless, it does increase an employee's pay based on 4-hour increments not directly correlated with meal times. While neither *Gagnon* nor the DOL regulations create a *per se* rule against reimbursement for meals, the payment here is based only on hours and not actual expenses. The allowance was automatic, and neither receipts nor requests for reimbursement were necessary. Camin argues that this payment was primarily for its own benefit because it sometimes required inspectors to work over 8 hours and miss a meal at home. But inspectors were not likely missing another meal 4 hours later, and another meal 4 hours after that.

Camin also presents no evidence that the meal allowance approximated inspectors' actual expenses. Camin in essence asks the court to take judicial notice that $7.00 reasonably approximates the cost of a fast food meal.[22] But absent evidence that inspectors regularly bought fast food meals after eight hours of work this fact is meaningless. The court concludes that the meal allowance must be included in the inspectors' regular rate of pay.

Because these extra payments were improperly excluded from the regular rate calculation, Camin's overtime payments to inspectors necessarily fell short of the amounts legally due under the FLSA. We now turn to the second part of the regular rate calculation.

### b.    The Regular Hourly Rate

Camin paid inspectors for overtime based on the fluctuating workweek method

---

[22]    *See* Dkt. 119 at 29 ("The $7 payment is facially reasonable").

described in 29 C.F.R. § 778.114. Plaintiffs contend that, due to the extra payments discussed above, an inspector's actual salary varied from week to week and therefore fails to satisfy the "fixed salary" criterion which the fluctuating workweek method allegedly requires. Other courts have held that extra payments of this sort are inconsistent with the use of the fluctuating workweek method of paying overtime. *See, Ayers v. SGS Control Servs.,* No. Civ. A. 03-9077, 2007 WL 646326 *10 (S.D.N.Y. Feb. 27, 2007) ("any plaintiff who received sea pay or day-off pay did not have 'fixed' weekly straight time pay, in violation of 29 C.F.R. § 778.114(a)"); *Adeva v. Intertek USA, Inc.,* No. Civ. A. 09-1096, 2010 WL 97991 *2 (D.N.J. Jan. 11, 2010); *O'Brien v. Town of Agawam,* 350 F.3d 279, 289 (1st Cir. 2003). Although the Fifth Circuit has not yet addressed this precise question, this court will assume for purposes of these motions that the extra payments in addition to the set salary render the provisions of §778.114 inapplicable to the inspectors.

The crux of plaintiffs' argument is that Camin has "violated" the requirements of § 778.114, thereby triggering the FLSA's "default" method of regular rate calculation – dividing total wages by 40 hours instead of by hours actually worked.[23] There are two flaws in this argument.

First, the terminology of "violation" is problematic here. Although some courts do speak of "violating" the fluctuating workweek standard, the term is misleading because no

---

[23]    The court declines to give preclusive effect to the decision in *Brumley v. Camin Cargo Control, Inc.,* No. Civ. A. 08-1798, 2010 WL 1644066 (D.N.J. Apr. 22, 2010). *Brumley* did not involve entirely identical plaintiffs or issues.

employer is obligated to compensate its employees using this (or any other) particular pay arrangement. "The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom." 29 C.F.R. § 778.109. The regulations provide several examples of the proper method of determining the regular hourly rate in particular instances, and § 778.114 is merely one of those examples. If the employer's compensation scheme does not fit the scenario described in § 778.114, then that section does not apply by its own terms. But it does not follow that there has been a "violation" of § 778.114, any more than there has been a "violation" of the piece rate method (§ 778.111), or the day rate method (§ 778.112), or the deferred commission method (§778.119). Those types of pay arrangements are simply inapplicable by their own terms, just like the fluctuating workweek. So, we must turn elsewhere to compute the regular rate.

Plaintiffs argue that the inapplicability of § 778.114 necessarily requires the use of a so-called "default" method of using 40 hours to determine the regular rate. But nothing in the statute or the DOL regulations mention such a default rule, as this court explained at length in *Givens v. Will Do, Inc. Houston,* 2012 WL 1597309 (S.D. Tex. 2012).[24] The traditional method of computing the regular rate, as succinctly put by the Supreme Court in *Missel,* is

---

[24]     The court recognizes that other district courts in other circuits have used the term, albeit without any source in the statutory text or regulations. *See, e.g., Ayers v. SGS Control Servs, Inc.*, No. 03Civ9078, 2007 WL 3171342 at *3 (S.D.N.Y. Oct. 9, 2007); *Yourman v. Dinkins*, 865 F.Supp. 154, 164-65 (S.D.N.Y. 1994); *Brumley*, 2010 WL 1644066 at *7.

"wage divided by hours equals regular rate." 361 U.S. at 580 n.16. This is reflected in 29 C.F.R. § 778.109, which instructs that as a general rule the  regular rate "is determined  by dividing [the employee's] total remuneration . . .  *by the total number of hours actually worked by him in that workweek for which such compensation was paid.*" The same principle is restated in the general regulation pertaining to salaried employees, 29 C.F.R. § 778.113. According to that regulation, if an employee is employed on a weekly salary basis, the regular hourly rate is  computed by "dividing the salary by the number of hours *which the salary is intended to compensate.*" § 778.113(a) (emphasis added). Nothing in this or any other regulation <u>requires</u> the regular rate calculation for salaried employees to be based on non-overtime hours. Instead, the key to the calculation is a question of fact: did the parties intend the salary to cover all hours worked in a given week, or only some lesser number of hours, such as 40? In other words, the divisor in the regular rate calculation hinges on the parties' intent. We turn now to that question.

Camin  has  presented  evidence  that  the  inspectors'  base  salary  was  intended  to compensate all hours, whether more or less than 40, worked in a week.[25] All plaintiffs signed

---

[25]    The court sustains Camin's objection (Dkt. 145) to plaintiffs' reliance on the deposition testimony of Marion Shtyrkalo, Camin's Controller, for the proposition that Camin has admitted that 40 is the proper denominator (Dkt. 139 at 39). Management gave Shtyrkalo a formula to use to perform a damages calculation for purposes of this lawsuit, and specifically for settlement. Dkt. 140-26 at 61,67-68; Dkt. 145-1 at 3. The testimony does not meet any standard for a judicial admission under Rule 801(d)(2). Shtyrkalo had nothing to do with setting payroll policies. Dkt. 140-26 at 17, 21, 29. He was not a Rule 30(b)(6) deponent. In sum, his testimony is not evidence of how many hours the total remuneration paid to inspectors was intended to cover.

14

Camin's "Inspector Compensation Policy Fixed Salary for Fluctuating Hours," which contains the following statements:

> Since an Inspector's hours of work will fluctuate from week to week, Camin Cargo Control, Inc. ("Camin Cargo") pays each of its inspectors on a fixed salary basis. Each Inspector's fixed salary is set at the start of the Inspector's employment and also when this policy is updated; however, an individual Inspector's fixed salary may be reviewed from time to time. Camin Cargo compensates its Inspectors for all hours worked in a workweek in accordance with the 'fixed salary for fluctuating hours' standard under 29 C.F.R. § 778.114 (see copy attached).
>
> ***   ***   ***
>
> "Fixed Salary" – Inspectors are compensated with a fixed salary for fluctuating hours which means that they receive the fixed salary (apart from overtime premiums) for all hours worked each workweek, whatever their number. Inspectors do not work a fixed schedule. An Inspector's fixed salary is his regular weekly compensation for ALL the hours he works in a given week without regard to how many hours he works in the workweek.[26]

Plaintiffs cite the depositions of Mark Pond, branch manager of Camin's Pasadena branch, and Christopher Taylor, branch manager of Camin's Thorofare, New Jersey branch. Pond testified that when Camin converted the pay for inspectors working at the Pasadena branch from a fluctuating work week to an hourly basis, Camin arrived at an hourly rate by dividing the biweekly salary by 80. Counsel asked "I take it that's because his salary was intended to compensate him for 80 hours?" Pond responded "yes."[27] However, Pond apparently was referring to Camin's intent at the time of the conversion, which was late 2012

---

[26] *E.g.*, Dkt. 121-1 at 17-24 (emphasis in original).

[27] Dkt. 140-4 at 12-13.

or early 2013. Pond also testified that prior to the conversion Camin paid inspectors by the fluctuating work week, inspectors were given the fluctuating workweek paper to sign, and he explained to them how the fluctuating workweek method worked.[28]

Christopher Taylor testified that when an inspector worked on what was supposed to be a day off, he was paid time and a half, calculated by "tak[ing] their annual salary, divid[ing] it by 52 weeks, 40 hours a week and get[ting] an hourly rate."[29] But upon further questioning he admitted "I don't know exactly that's their calculation to come up with the hours. That's just off of -- I'm just assuming."[30]

Given the signed agreements expressly acknowledging the understanding that inspectors' salaries were intended to cover the total number of hours worked, no matter how few or many, plaintiffs' evidence is insufficient to create a genuine issue of material fact on the issue.

In sum, to convert an inspector's salary to a regular hourly rate for purposes of calculating overtime, the numerator is the inspector's base salary plus offshore pay, car allowance and mileage payments, and meal allowances; the denominator is the number of hours the inspector worked in the given week.

For each hour of overtime worked in a given week, an employee is entitled to one and

---

[28]   *Id.* at 12-13, 35.

[29]   Dkt. 140-24 at 49.

[30]   *Id.* at 51.

one-half times his regular rate of pay for that workweek. 29 U.S.C. § 207(a). Because the inspectors have already received straight-time pay for all hours worked, based on the factual findings above, they are entitled only to additional half-time pay for each overtime hour. Moreover, because the inspectors have received some overtime pay (erroneously calculated) for those overtime hours, those amounts should be deducted from the half-time premium, in order to arrive at the final amount of unpaid overtime due.

**2.     Dispatchers**

Camin contends that dispatchers, whom it calls inspector coordinators, are covered by the FLSA's executive and administrative exemptions. Camin bears the burden to prove the dispatchers are exempt from the FLSA's overtime requirements. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

**a.     Executive exemption**

In order to establish that the dispatchers meet the executive exemption, Camin must show: (1) they were compensated on a salary basis at a rate of not less than $455 per week; (2) their primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) they customarily and regularly direct the work of two or more other employees; and (4) they have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a). Plaintiffs contest the second, third and fourth

elements. The fourth element is dispositive.

Camin argues that dispatchers "had the authority to, and did in fact, discipline inspectors for performance deficiencies, and on many occasions 'effectively recommended discipline.'"[31] But Camin's argument overstates the testimony of the workers cited. None of the evidence cited by Camin suggests that a dispatcher's recommendation as to the "hiring, firing, advancement, promotion, or any other change of status of other employees" was given "particular weight." In fact, although there is some evidence that a dispatcher reviewed inspectors' paperwork and occasionally "wrote up" an inspector,[32] there is no evidence of any instance in which a dispatcher had a role in a hiring, firing, promotion or disciplinary decision.[33] Based on the record, no reasonable trier of fact could conclude that dispatchers meet the executive exemption of the FLSA and plaintiffs' are entitled to summary judgment on this issue.

**b.    Administrative exemption**

The overtime provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In order to qualify for this exemption, the employee must (1) be compensated at a salary of at least $455 per week, (2) have a primary duty of performing office or non-manual work directly

---

[31]    Dkt 136 at 12.

[32]    Dkt. 136-7 at 3; Dkt. 136-6 at 4.

[33]    While not dispositive, this is consistent with the job description, which does not mention such a role. Dkt. 136-3 at 8.

related to the management or general business operations of the employer or the employer's customers, and (3) have a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). Plaintiffs dispute the second and third elements. The court focuses on the second element.

An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 700(a).

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* The court looks to the aspect of the employee's job that is "of principal value to the employer, not the collateral tasks that she may also perform even if they consume more than half her time." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990).

Duties that relate to "general business operations" are those that every business must undertake, not those specifically related to what service or product the business provides.

> The regulations explain that work directly related to management or general business operations includes work in the following "functional areas": tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

*Alvarez v. Key Transp. Serv. Corp.*, 541 F. Supp. 2d 1308, 1313 (S.D. Fla. 2008) (citing 29

C.F.R. § 541.201(b)).

The evidence supports a finding that the primary duty of dispatchers was to dispatch inspectors to customer locations.[34] While there is some evidence that dispatchers performed various other tasks, this evidence does not support a finding that any of those ancillary tasks were a dispatcher's primary duty. Moreover, the ancillary tasks identified (such as checking paperwork to make sure inspectors were not making mistakes) relate to producing the services that Camin exists to provide, not the business affairs of the enterprise.[35] *See Dalheim*, 918 F.2d at 1230.

The court concludes that plaintiffs are entitled to summary judgment that dispatchers are not exempt from the FLSA's overtime provisions.

**3.    Good faith**[36]

If an employee proves that his employer violated the FLSA, he is entitled to liquidated damages. *Bernard v. IBP, Inc.*, 154 F.3d 259, 267 (5th Cir. 1998); 29 U.S.C. § 216(b). To avoid liquidated damages, the employer bears the substantial burden of proving it acted with good faith and had reasonable grounds for believing its actions did not violate the FLSA. *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003); 29 U.S.C. § 260. Good faith requires a duty to investigate potential liability under the FLSA. *Barcellona v. Tiffany*

---

[34]    Dkt. 128-1; Dkt. 128-2; Dkt. 128-3; Dkt. 128-4 at 23.

[35]    *See* Dkt. 136 at 5-7 and evidence cited therein.

[36]    Plaintiffs have alleged that Camin willfully violated the FLSA. Plaintiffs are not moving for summary judgment as to willfulness.

*English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979).

Plaintiff contends that it is entitled to summary judgment on this affirmative defense because Camin (1) failed to include incentive payments in inspectors' regular rate of pay even after *Brumley*; (2) failed to investigate whether the incentive payments were based on a reasonable approximation of the inspectors' expenses; (3) implemented its incentive payment program inconsistently with its own policies for expense reimbursement; and (4) was previously investigated for classifying inspectors as exempt employees.

Camin has not met its burden to show it acted in good faith or had reasonable grounds to believe it was in compliance with the FLSA. The only analysis performed on any of the pay issues raised here related to the car allowance. Even that was superficial in that it failed to take into consideration the mileage reimbursement or to adequately investigate inspectors' actual expenses. Furthermore, while *Brumley* did not involve issues identical to those in dispute here, it should have put Camin on notice of the need to reevaluate the way it paid inspectors.[37] Moreover, there is no evidence that Camin performed any investigation or made an informed decision to treat dispatchers as exempt employees. Because the court has determined that Camin violated the overtime requirements of the FLSA, plaintiffs are entitled to liquidated damages.

---

[37]     *See* Dkt. 126-6 at 9 (Claudio Camin. Dep.) (Q: What is your understanding as to what happened in the Brumley lawsuit? A: That we were sued because we were -- we didn't consider certain payments into the fixed salary.).

**CONCLUSION AND ORDER**

For the reasons stated above, defendants' motion (Dkt. 119) is denied in part and granted in part; plaintiffs' motion regarding inspectors (Dkt. 126) is granted; plaintiffs' cross-motion on calculation of damages (Dkt. 139) is denied; plaintiffs' motion regarding dispatchers is granted (Dkt. 128); and plaintiffs' motion regarding the good faith defense (Dkt. 127) is granted.

A final status conference will be set within 60 days.

Signed at Houston, Texas on April 16, 2015.


Stephen Wm Smith
United States Magistrate Judge